## IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA
## CIRCUIT CIVIL DIVISION

DR. ART ARNOLD, LARRY AUERBACH,
STEPHEN AXELROD, ADREA BRIER, RALPH
ECKLER, RICHIE FRIEDMAN, MARGARET
HEGLUND, NORMAN CHARLES HEGLUND,
KAI TAK INTERNATIONAL LTD., ANN B.
KUEFFNER, ZVI KURTZMAN, CIPORA
LAVUT, CHANA KURTZMAN, REGINA C.
LEMMER, MACATHEL LP, CRAIG MACNAB,
GREGORY MCDANIEL, LARRY
MCNAMARA, PHYLLIS POOR, JAMES
TIAMPO and WOLFE AXELROD
WEINBERGER ASSOCIATES, LLC

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§    2011 CA 003845 XXXXNB
§
§
§    Case No.
§

          **Plaintiffs,**

    -versus-

THOMAS A. MCFALL, DAVID F HACKETT,
ROBERT M. BROWN, GARY P. ARNOLD ①
GARY L. FISHMAN, BARRY S. LUTIN and
RICHARD R. SCHREIBER ②

          **Defendants.**



§
§
§
§
§
§
§
§
§
§
§

FILED 2011 MAR 14 AM 10: 02 SHARON R. BOCK, CLERK PALM BEACH COUNTY CIRCUIT CIVIL

## COMPLAINT

Plaintiffs, DR. ART ARNOLD, LARRY AUERBACH, STEPHEN AXELROD, ADREA

BRIER, RALPH ECKLER, RICHIE FRIEDMAN, MARGARET HEGLUND, NORMAN

CHARLES HEGLUND, KAI TAK INTERNATIONAL LTD., ANN B. KUEFFNER, ZVI

KURTZMAN, CIPORA LAVUT, CHANA KURTZMAN, REGINA C. LEMMER,

MACATHEL LP, CRAIG MACNAB, GREGORY MCDANIEL, LARRY MCNAMARA,

PHYLLIS POOR, JAMES TIAMPO and WOLFE AXELROD WEINBERGER ASSOCIATES,

LLC, by and through their undersigned counsel, sue THOMAS A. MCFALL ("MCFALL"),

DAVID F HACKETT ("HACKETT"), ROBERT M. BROWN ("BROWN"), GARY P.

ARNOLD, GARY L. FISHMAN, BARRY S. LUTIN and RICHARD R. SCHREIBER, and as grounds therefore allege:

1.  This is an action for damages in excess of Two Million Dollars ($2,000,000) exclusive of costs, interest and attorney's fees.

2.  McFall is an individual and is a resident of Palm Beach County, Florida.  He served at all relevant times as Chairman of the Board and Senior Executive Officer of Gulfstream.

3.  Hackett is an individual and is a resident of Palm Beach County, Florida.  He served at all relevant times as Chief Executive Officer, President and Director of Gulfstream.

4.  Brown is an individual whose residence is yet to be determined.  He served at all relevant times as a Chief Financial Officer of Gulfstream.

5.  Arnold is an individual and is a resident of Escambia County, Florida.  He served at all relevant times as a Director of Gulfstream.

6.  Fishman is an individual and is a resident of Broward County, Florida.  He served at all relevant times as a Director of Gulfstream.

7.  Lutin is an individual and is a resident of Middlesex County, Connecticut.  He served at all relevant times as a Director of Gulfstream.

8.  Schreiber is an individual whose residence is yet to be determined.  He served at all relevant times as a Director of Gulfstream.

9.  Defendants are subject to the jurisdiction of this Court pursuant to §48.193 Fla. Stat., as they have operated, conducted, engaged in, or carried on a business or business venture in the State of Florida and have offices in Florida, through which they conduct business.  Defendants have engaged in substantial and not isolated activity within this state.

10.  Venue is proper in Palm Beach County as it is where McFall and Hackett reside.

## BACKGROUND FACTS

### Gulfstream Engages Jesup to Raise Capital

11.     Gulfstream International Group, Inc. (Gulfstream) is a corporation organized and existing under the laws of the State of Delaware.  The certificate of incorporation was filed in the Office of the Secretary of State of Delaware on December 20, 2005, amended on May 9, 2007 and further amended on October 26, 2009.  Its principal place of business is Fort Lauderdale, Florida.

12.     Gulfstream is a commercial airline presently operating in Chapter 11 Bankruptcy in the U.S. Bankruptcy Court for the Southern District of Florida under Case N. 10-44131-JKO.

13.     McFall has served as Chairman of the Board of Directors of Gulfstream, as well as its Senior Executive Officer, since March 2006.  Hackett has served as Gulfstream's President since June 2003 and has been Chief Executive Officer since March 2006.  Brown has been Chief Financial Officer of Gulfstream since January 2007.

14.     During 2010 and prior to filing its petition for Bankruptcy, Gulfstream marketed and then entered into a series of financing transactions, including the raising of capital through the sale of securities to customers of Jesup and Lamont Securities Corporation ("Jesup").

15.     Sometime in 2009, Jesup's head of Investment Banking, Eduardo Cabrera ("Cabrera") began to take an interest in Gulfstream as a possible Investment Banking client.  In or about late 2009, Cabrera introduced Jesup's head of National Sales at the time, Donald Wojnowski ("Wojnowski"), to McFall during a telephone conference call.  McFall acknowledged that for 2008 and early 2009, Gulfstream had suffered losses due to the recession and its effect on Gulfstream's passenger traffic; which catered largely to tourist destinations in the Bahamas.  McFall also stated on that telephone conference call, and on numerous other occasions, that Gulfstream had turned the corner to profitability.

16.     Based upon representations made to Wojnowski, Cabrera and others at Jesup by McFall, Hackett and Brown (the "Officers"), Jesup engaged in the process of raising capital for Gulfstream, referred to herein as the "Jesup Raises."

17.     The first of the Jesup financings was in January 2010 through the sale of common stock and warrants.  At that time, One (1) share of common stock and One (1) warrant for the right to purchase Three-Quarters (3/4) of a share of common stock were sold for One Dollar and Forty Cents ($1.40).  The gross amount of the capital raised was approximately Four Hundred Thousand Dollars ($400,000).

18.     In or about June 2010, Gulfstream closed on the sale of a Series A Convertible Preferred Offering (the "Preferred Shares").  The Preferred Shares were sold to accredited investors pursuant to a subscription agreement referred to as the Series A Convertible Preferred Stock Purchase Agreement (the "Agreement").  The amount raised was approximately One Million, Five Hundred Thousand Dollars ($1,500,000), before fees and costs.  Each Preferred Share was assigned a value of Ten Dollars ($10) and was to be convertible into ten (10) shares of common stock.  The accompanying warrants were issued for a period of five (5) years and could be exercised to purchase fifty percent (50%) of the aggregate number of common shares resulting from the conversion of the Preferred Shares.  In addition, the Preferred Shares were to pay a dividend at the rate of twelve percent (12%) per annum, payable quarterly.  Sixty percent (60%) of each quarterly dividend payment was to be paid in cash at an annual rate of seven percent (7%).  Forty percent (40%) could be paid in cash at an annual rate of five percent (5%) per annum or in common stock based on the market price of Gulfstream's common stock on the dividend payment date.

4

### **"Road Show" Presentations**

19.     In connection with the Jesup Raises, the Officers prepared and/or provided to Jesup management and brokers, as well as prospective investors, "Investor Presentations" dated February 2010 and June 2010, respectively, as well as a "European Investor Presentation" also dated June 2010 (collectively the "Presentations").  The Presentations were distributed during numerous "Road Shows" held at Jesup branch offices in New York, Chicago, San Francisco, Boston and Boca Raton.  Numerous presentations were conducted by the Officers, both in person and by telephonic conference calls, with prospective investors in the United States and Europe.[1]

### **Second Quarter 10Q Belies Prior Representations by Gulfstream's Officers**

20.     In or about late August 2010, Gulfstream filed its Form 10-Q, or quarterly report, for the second quarter ended June 30, 2010 (the "10Q") with the Securities and Exchange Commission ("SEC").  That 10Q directly, substantially and broadly contradicts the representations made in the Presentations.  The stark nature of these discrepancies suggest a conscious effort to avoid the perpetuation of false and deceptive statements in a document filed with the SEC.

21.     The Presentations are replete with serious, material and knowing misrepresentations and omissions.  For example, the Presentations characterize the company as returning to profitability on the strength of certain "improving trends" including: advanced bookings, the profitability of its "Northern Operations," increasing average fares and fuel prices returning to historical levels.  The representations of the Officers as to profitability and forward revenue projections were artificially and substantially inflated.

22.     In contrast to the "improving trends" for 2010 described in the Presentations, the 10Q reflects that the "consolidated net loss for the three and six months ended June 30, 2010 was

---

[1] Although the Presentations bear dates of either February 2010 or June 2010, the respective Presentations were distributed prior to those dates.

$1,376,000 and $2,779,000, respectively compared to net income of $2,233,000 and $2,963,000 for the comparable periods last year." The 10Q further states that for the six months ended June 30, 2010, as compared to the year earlier period, "Airline Passenger Revenue" decreased 8.9%, charter and other revenue decreased 18%, Passenger Service Expenses increased 20.5%. Cash and cash equivalents fell to $1.1 million from $2.3 million and negative working capital rose to $17.8 million from $14.6 million. The average price per gallon of jet fuel increased 36.3% compared to the average price for the three months ended June 29, 2009 and jet fuel as a percentage of airline revenue increased to 18.2% for the six months ended June 30, 2010 from 14.6% for the six months ended June 30, 2009. (The year over year increase of the cost of jet fuel as a percentage of revenue would be even greater with the exclusion of a one-time expense of $337,000, incurred in February 2009 to close out a fuel hedge transaction). There was simply no basis to tout a return to profitability; in fact, the opposite was true.

23.    The Presentations state that Gulfstream was licensed to operate between the U.S. and Cuba and was among the few U.S. airlines to have Cuban landing rights. The Officers touted Gulfstream's license as an asset which would substantially increase in value as expected future travel to Cuba increased. In fact, the license to operate air travel to Cuba was not owned by Gulfstream. Although Gulfstream did have a service agreement for which it received 75% of the profit for operating flights to Cuba, it would not accrue the benefit of the expected appreciation of the value of the license.

24.    During the Road Show presentations, the Officers disclosed that on May 7, 2009, the Federal Aviation Administration (FAA) had previously sought to impose a civil penalty on Gulfstream of One Million, Three Hundred and Ten Thousand Dollars ($1,310,000) for non-compliance with certain record keeping requirements. The Officers falsely represented that Gulfstream had reached a verbal agreement with the FAA to settle the civil penalty for between

One Hundred Thousand Dollars ($100,000) and One Hundred and Fifty Thousand Dollars ($150,000). As reflected in the 10Q, the actual amount of the settlement was Five Hundred and Fifty Thousand ($550,000).

<u>The April 27, 2010 e-mail</u>

25.     Several Plaintiffs were sophisticated and experienced businessmen who had direct communications with the Officers regarding their participation in the Jesup Raises. One of those individuals was Craig MacNab ("MacNab"). MacNab is the Chairman and Chief Executive Officer of National Retail Properties (NYSE symbol NNN), a Real Estate Investment Trust (REIT) with a market capitalization of over Two Billion Dollars. MacNab is very adept at discerning and assessing the nature and risks of investment opportunities. MacNab's willingness to invest, after direct communications with the Officers was, in hindsight, predicated on misdirection and deception.

26.     Examples of such deception are reflected in an e-mail from McFall to MacNab, on Tuesday, April 27, 2010, at 10:03 a.m. (the "April 27, 2010 e-mail"), which states:

> Craig,
> The total looks like:
> $400,00 first close
> $1,500,000 second close
> $500,000 from Bahamian Government (subsidy)
> $1,000,000 Loan arranged from close associates.
> Total: $3,400,000.
> Now on to the big raise to buy out the fleet!
> All the best,
> Tom

27.     As evidenced by the April 27, 2010 e-mail, McFall and other Defendants represented that Gulfstream had received a Five Hundred Thousand Dollar ($500,000) subsidy from the Bahamian Government. In fact, the Bahamian Government did not provide any subsidy of that magnitude to Gulfstream. The reference to the receipt of Five Hundred Thousand Dollars ($500,000) may, in fact, relate to certain financial assistance received from the "Out Island

Promotion Board" (OIPB).  The OIPB is a non-profit organization in the Bahamas made up of

hoteliers interested in maintaining tourist traffic to their businesses.  Even assuming that the

concessions made by the OIPB approximated Five Hundred Thousand Dollars ($500,000), such

concessions were to be paid out over a period of time and were to be comprised of an

undisclosed combination of cash and "in-kind," non-cash payments.

### Gulfstream's "friends and family" loan

28.    The Officers had disclosed that Gulfstream had raised approximately One Million,

Five Hundred Thousand Dollars ($1,500,000) through the issuance of subordinated notes on

October 7, 2009 (the "October Debt").  When those notes matured in January 2010, just three (3)

months after issuance, they were reconstituted, but on terms more favorable to Gulfstream.  The

more favorable terms included a provision that the failure by Gulfstream to pay on the debt

would not be deemed a default.  The Officers had also falsely represented that the October Debt

would be converted to preferred shares on the same terms as the Jesup Raise in June 2010; it

never was.

29.    The reference in the April 27, 2010 e-mail to a One Million Dollar ($1,000,000) loan

arranged from close associates (the "Loan") is misleading in several respects.  The impression

from that e-mail is that the Loan was an infusion of new money into the company.  In fact, the

Loan appears to have been part of the October Debt.  As set forth in the 10Q, "Cash provided by

financing activities for the six months ended June 30, 2010 was due to an increase in notes

payable for $1.5 million, $1 million of which was issued as a senior secured note."  Not only was

the October Debt not converted to preferred shares, $1 Million of the $1.5 Million debt was

surreptitiously converted to a senior secured note in February 2010.  The preferential status of

the Loan in the form of a senior secured note was never disclosed to Plaintiffs at any time prior

to the Jesup Raises.  This omission was of such significance that, had it been disclosed, the Jesup

Raises would likely have never occurred.  Moreover, the "senior" status assigned to the Loan is evidence of self-dealing by the Officers to unjustly favor themselves, friends and/or family, at the expense of others, including Plaintiffs. Clearly, the identity of the "close associates" who had purportedly invested the $1 million should have been disclosed along with the terms of the note.

30.     Plaintiffs were reassured not only by the belief that the Loan was an infusion of "new capital" but also by representations made by the Officers that McFall, himself, had contributed a significant portion of the Loan proceeds.  The notion that the CEO had "skin in the game" had an obvious, positive impact on Plaintiffs.  In fact, McFall had made little, if any, contribution to the Loan.

31.     The Officers also failed to make any mention of the fact that the Loan included 409,827 warrants with an exercise price of One Dollar and Twenty-Two Cents ($1.22).  What also went undisclosed was the provision that if the Loan was not repaid by June 30, 2010, the amount of warrants payable to the Loan investors would double from 409,827 to 819,654, thereby diluting the value of Plaintiffs investment.

32.     Of considerable significance to MacNab was the comment by McFall in the April 27, 2010 e-mail: "Now on to the big raise to buy out the fleet!"  It was understood that Gulfstream would need to do an additional raise of approximately Twenty Million Dollars ($20,000,000) in order for Gulfstream to purchase its aircraft, when the lease of its fleet from Raytheon Aircraft Credit Corporation expired later in the year.

33.     The Officers had consistently projected, as a standard feature of their Road Show presentations, that the financing completed in spring 2010 would be more than sufficient to fund operations through the time that Gulfstream would purchase its planes which, in turn, would result in significant cost reductions from that point forward.  The April 27, 2010 e-mail, when viewed in this context, reinforced to MacNab what many others had also been led to believe, that

the company would have "smooth sailing" financially through the financing and purchase of its fleet.

34.    The Officers masked the pressing and immediate need for new capital to pay for imminent financial obligations, while fostering the erroneous belief that the present funding, along with profitable operations, would see the company through to the purchase of it airplanes. The Officers' unwarranted portrayal of optimism was belied by the knowledge that Gulfstream's financial condition was actually in dire straits.  The 10Q reported that the cash used to fund operations had increased to $3.8 million for the six months ended June 30, 2010 compared to $0.5 million for the same period the year before, "due primarily to an increased operating loss during the first half of 2010".  Gulfstream's financings amounted ostensibly to "borrowing from Peter to pay Paul."

35.    Repeated representations made by the Officers that the Jesup Raises and other funding sources would enable Gulfstream to reach "core objects," such as jump-starting its new Pittsburgh market, were nothing more than the product of whimsical imaginations.  There was no capital for strategic expansion, contrary to what the Officers had led Plaintiffs to believe.  This point is illustrated in the 10Q with respect to "Investment Activities." "Cash used in investing activities decreased from $434,000 for the six months ended June 30, 2009 to $163,000 for the six months ended June 30, 2010 due to a decrease in the acquisition of property and equipment." It is really a misnomer to attribute the decrease in cash investment to a decrease in the acquisition of property and equipment. Rather, the opposite is true.  The decrease of investment in property and equipment was due to the decrease in available cash.  Gulfstream was simply in no position to use capital to expand its operations when, in actuality, the airlines resources were constantly being diverted to meet payroll, pay "past due" obligations and to fend off the real and ever present threat of bankruptcy.

36.     Defendants have benefited from the Jesup Raises while Plaintiffs have been harmed by the fraudulent and improper actions of Defendants as set forth in this Complaint.  Plaintiffs lost their entire investment, including the loss of dividend income.

## COUNT I - VIOLATIONS OF FLORIDA STATUTES 517.301 and 517.211

### (As Against All Defendants)

37.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38.     This claim is asserted against all Defendants and is based upon Sections 517.301 and 517.211 of the Florida Statutes, Florida's Blue Sky laws.

39.     As discussed herein, Defendants directly engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, practices, and courses of business which operated as a fraud and deceit upon Plaintiffs or their agents, and made various deceptive and untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiffs and their agents.

40.     The purpose and effect of said scheme, plan, and unlawful course of conduct was, among other things, to conceal Defendants wrongdoing and masking of the substantial losses of Gulfstream and its dire need for capital.

41.     Defendants, pursuant to said scheme, plan, and unlawful course of conduct, knowingly and recklessly issued, caused to be issued, or participated in the preparation, issuance and distribution of deceptive and materially false and misleading statements to Plaintiffs and their agents.

42.     The omitted or misrepresented facts, statements, Presentations and communications discussed in this Complaint were material in that there is a substantial likelihood that a

11

reasonable investor would consider these facts, statements or documents important in making investment decisions.

43.    Plaintiffs and their agents, in ignorance of the false and misleading statements set forth herein and the deceptive and manipulative devices and contrivances employed by Defendants, relied to their detriment on such misleading statements and omissions.

44.    Plaintiffs have been damaged as a result of the wrongs of Defendants in an amount to be proved at trial, but believed to be in excess of $2,000,000, exclusive of interests, fees, and other costs.

45.    For the reasons discussed herein, Defendants violated Section 517.301 of the Florida Statutes in that, in connection with the rendering of investment advice or in connection with the offer, sale, or purchase of any investment or security it: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in practices or courses of business which operated or would operate as a fraud or deceit upon any person, in connection with the sale of securities to Plaintiffs.

46.    Pursuant to Section 517.211 of the Florida Statutes, every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission, if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.

47.    Accordingly, Defendants are jointly and severally liable to Plaintiffs for their participation or aiding in the purchase or sale of securities in violation of section 517.301 of the Florida Statutes as discussed herein.

48.     Plaintiffs are entitled to rescission of securities still owned, or for damages for securities Plaintiffs have sold, as available pursuant to § 517.301, Florida Statutes, interests, costs, and attorney's fees pursuant to § 517.211, Florida Statutes.

## COUNT II - VIOLATIONS OF RULE 20(a) OF THE SECURITIES EXCHANGE ACT

## OF 1934

### (As Against All Defendants)

49.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50.     This claim is asserted against Defendant pursuant to Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78t(a).

51.     Defendants each acted as control persons within the meaning of Section 20(a) of the Securities Exchange Act of 1934, of Gulfstream by virtue of their respective positions as Officers, Directors or both.

52.     Defendants influenced, directed and controlled the actions, misrepresentations, and omissions set forth herein.

53.     By virtue of their respective positions of authority, responsibility and control, each Defendant had the ability to direct the issuance of securities by Gulfstream and to prevent the actions, misrepresentations and omissions set forth in this Complaint.

54.     Moreover, Defendants profited directly or indirectly from the unwarranted and deceptive methods by which they sold securities to and raised funding from Plaintiffs.

55.     As a direct and proximate result of Defendants' wrongful conduct, including violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, Plaintiffs suffered economic losses and damages in

connection with the investment of their funds in an amount to be proven at trial, but believed to be in excess of $2,000,000, plus interest, fees, and other costs.

## COUNT III - NEGLIGENT MISREPRESENTATION

### (As Against All Defendants)

56.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.     Defendants made false and material misrepresentations and omissions or caused false and material misrepresentations and to be made to Plaintiff

58.     Defendants had reason to know that the representations were false at the time they were made, or failed to make reasonable inquiry into the truth or accuracy of the representations to Plaintiffs and their agents.

59.     The misrepresentations were material and were made for the purpose of inducing Plaintiffs to purchase Gulfstream securities.

60.     The misrepresentations induced Plaintiffs to purchase Gulfstream securities and Plaintiffs reasonably relied on the misrepresentations and omissions to their detriment and would not have purchased Gulfstream securities but for these misrepresentations and omissions.

61.     As a result of Defendants' actions, Plaintiffs have been damaged.

## COUNT IV - BREACH OF FIDUCIARY DUTIES OF CARE, GOOD FAITH AND LOYALTY

### (As Against All Defendants)

62.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63.     Defendants have violated the fiduciary duties they owed to Plaintiffs as shareholders of Gulfstream, and their violation of the terms of the Jesup Raises demonstrates a clear absence

of the exercise of due care, good faith and of loyalty to Plaintiffs as public shareholders. As alleged above, Defendants consistently confirmed that Gulfstream's business was turning profitable or had become profitable which, at the time such statements were made, was untrue. Yet despite this, Defendants caused Plaintiffs to enter into the Jesup Raises at a time that they knew or should have known their representations were false. These false statements were relied on by Plaintiffs or their agents in investing in the Jesup Raises.

64.     Defendants failed to properly inform Plaintiffs and their agents that Defendants would personally benefit, either directly or indirectly, by deceiving Plaintiffs into purchasing Gulfstream securities and, thereby, infusing capital in to Gulfstream

65.     By reason of the foregoing, Plaintiffs have suffered irreparable injury, including injury for which there is no adequate remedy at law.

### COUNT V - FRAUD IN THE INDUCEMENT

### (As Against All Defendants)

66.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67.     As discussed herein, Defendants directly engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, practices, and courses of business which operated as a fraud and deceit upon Plaintiffs and their agents, and made various deceptive and untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiffs and their agents.

68.     The purpose and effect of said scheme, plan, and unlawful course of conduct was, among other things, to conceal Defendants wrongdoing and masking of the substantial losses of

Gulfstream and its dire need for capital in order to induce Plaintiffs to each enter into a respective Agreement with Gulfstream.

69.     Defendants, pursuant to said scheme, plan, and unlawful course of conduct, knowingly and recklessly issued, caused to be issued, or participated in the preparation, issuance and distribution of deceptive and materially false and misleading written and oral statements to Plaintiffs and their agents.

70.     The omitted or misrepresented facts, statements, Presentations and communications discussed in this Complaint were material in that there is a substantial likelihood that a reasonable investor would consider these facts, statements or documents important in making investment decisions.

71.     Plaintiffs and their agents, in ignorance of the false and misleading statements set forth herein and the deceptive and manipulative devices and contrivances employed by Defendants, relied to their detriment on such misleading statements and omissions.

72.     Plaintiffs have been damaged as a result of the wrongful actions of Defendants in an amount to be proved at trial, but believed to be in excess of $2,000,000, exclusive of interests, fees, and other costs.

## COUNT VI - BREACH OF CONTRACT

### (As Against All Defendants)

73.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 72 of this Complaint as if fully set forth herein.

74.     Plaintiffs each entered into respective agreements with Gulfstream for the purchase of securities.

75.     Defendants breached the terms of the agreement and the implied duty of good faith.

76.     As a result of Defendants breach, Plaintiffs have been harmed and are believed to have lost all of the $2,000,000 or more invested in Gulfstream's securities and seek rescission of their investments.

## COUNT VII - RECISSION

### (As Against All Defendants)

77.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78.     Plaintiffs purchased Gulfstream securities in reliance on the false statements or omissions of material facts made by as discussed herein.

79.     Defendants' misrepresentations, omissions of material fact, and false statements made to Plaintiffs and their agents regarding the financial condition of Gulfstream discussed herein were made with the knowledge that these statements and representations were false. These misrepresentations and omissions of material fact were made with the intent to induce Plaintiffs to invest in Gulfstream securities.

80.     Plaintiffs are believed to have lost all of the $2,000,000 or more invested in Gulfstream's securities and seek rescission of their investments.

81.     Plaintiffs further seek the dividend payments to which they were entitled by virtue of their investments with Gulfstream.

82.     Plaintiffs have no adequate remedy at law.

**WHEREFORE** Plaintiff Plaintiffs pray for judgment against Defendants as follows:

a.   Compensatory damages that will make Plaintiffs whole and such other damages that are still yet unknown, from each Defendant at an amount to be determined at trial. The current *known* damage amount sought is TWO MILLION ($2,000,000.00) dollars; and/or

Rescission of securities still owned by the Plaintiff, or for damages for securities the Plaintiff

has sold, as available pursuant to § 517.301, Florida Statutes;

    b.   Interest;

    c.   Attorneys' fees in accordance with Chapter 517.211 et seq. Florida Statutes;

    d.   Costs/forum fees; and

    e.   For such other and further relief as is just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury on all issues so triable.

Dated: this **14**<u>th</u> day of _March_, 2011

Respectfully submitted,

Todd A. Zuckerbrod, Esq.
Florida Bar # 05 3337
*Attorney for Plaintiffs*
40 SE 5th Street, Suite 400
Boca Raton, FL  33432
(561) 544-8144 (Telephone)
(561) 801-3408 (Cellular)
(561) 544-1101 (Facsimile)
tz@tzbrokerlaw.com

```
                                        Page:        1
                       R E C E I P T
                       -------------

                           PALM BEACH CTY CIR CT JISPROD

                         Receipt Number:    CAMB534606
                                  Date:  14-MAR-2011
                                Cashier:    KGUZMAN

Payor: TODD A ZUCKERBROD PA
Addr:

Violation/Docket        Description              Amount
----------------------- ----------------------- ----------------
Case: 2011CA003845 - DR ART ARNOLD V THOMAS MCFALL
Party: ART ARNOLD
CAFF                                             401.00
CAFF                                               5.00
CAFF                                              20.00

                    CHECK RECEIVED GENERAL ACCT   -426.00


                           Total Fees:           426.00

                        Total Payment:           426.00
```

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form shall be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075. (See instructions for completion.)

**I.      CASE STYLE**

(Name of Court)       50 2011 CA 003845 XXXXMB

Plaintiff _Dr Art Arnold, et al ._

Case #: _____

Judge: _____

vs.

Defendant _Thomas. A. Mc Fall_

AB

**II.     TYPE OF CASE**   (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x in both the main category and subcategory boxes.

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
　☐ Business governance
　☐ Business torts
　☐ Environmental/Toxic tort
　☐ Third party indemnification
　☐ Construction defect
　☐ Mass tort
　☐ Negligent security
　☐ Nursing home negligence
　☐ Premises liability—commercial
　☐ Premises liability—residential
☐ Products liability
☐ Real property/Mortgage foreclosure
　☐ Commercial foreclosure $0 - $50,000
　☐ Commercial foreclosure $50,001 - $249,999
　☐ Commercial foreclosure $250,000 or more

☐ Homestead residential foreclosure $0 - $50,000
☐ Homestead residential foreclosure $50,000 - $249,999
☐ Homestead residential foreclosure $250,000 or more
☐ Nonhomestead residential foreclosure
　$0 - $50,000
☐ Nonhomestead residential foreclosure
　$50,001 - $249,999
☐ Nonhomestead residential foreclosure
　$250,000 or more
☐ Other real property actions $0 - $50,000
☐ Other real property actions $50,001 - $249,999
☐ Other real property actions $250,000 or more
☐ Professional malpractice
　☐ Malpractice—business
　☐ Malpractice—medical
　☐ Malpractice—other professional
☐ Other
　☐ Antitrust/Trade regulation
　☐ Business transactions
　☐ Constitutional challenge—statute or ordinance

☐ Constitutional challenge—proposed amendment     ☐ Libel/Slander
☐ Corporate trusts     ☐ Shareholder derivative action
☐ Discrimination—employment or other     ☒ Securities litigation
☐ Insurance claims     ☐ Trade secrets
☐ Intellectual property     ☐ Trust litigation

**III.**    **REMEDIES SOUGHT** (check all that apply):
☑ monetary;
☑ nonmonetary declaratory or injunctive relief;
☐ punitive

**IV.**    **NUMBER OF CAUSES OF ACTION:** [7
(specify) _Violation of Fla Stat. 517   Violation of SEA of 1934 Rule 10b, Neg. Misrepresentation_
_Breach of fiduciary duty, Fraud in the Inducement, Breach of Contract, Rescission_

**V.**    **IS THIS CASE A CLASS ACTION LAWSUIT?**
☐ yes
☑ no

**VI.**    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☑ no
☐ yes If "yes," list all related cases by name, case number, and court.

_____

_____

_____

**VII.**    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
☑ yes
☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature _Todd Zuckerbrod_          Fla. Bar # _0573337_
        Attorney or party                (Bar # if attorney)

_Todd A. Zuckerbrod_            _3/14/11_
(type or print name)                     Date

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

DR. ART ARNOLD, LARRY AUERBACH, STEPHEN
AXELROD, ADREA BRIER, RALPH ECKLER, RICHIE
FRIEDMAN, MARGARET HEGLUND, NORMAN CHARLES
HEGLUND, KAI TAK INTERNATIONAL LTD., ANN B.
KUEFFNER, ZVI KURTZMAN, CIPORA LAVUT, CHANA
KURTZMAN, REGINA C. LEMMER, MACATHEL LP,
CRAIG MACNAB, GREGORY MCDANIEL, LARRY
MCNAMARA, PHYLLIS POOR, JAMES TIAMPO and
WOLFE AXELROD WEINBERGER ASSOCIATES, LLC

§
§
§
§
§
§
§
§
§
§
§
§
§
§         5C  2011 CA 003845 XXXXMB
§
§
§  Case No.
Plaintiffs,                                    §
§
-versus-                                       §
§
§  Fla. Bar No: 0573337
THOMAS A. MCFALL, DAVID F HACKETT, ROBERT M.   §
BROWN, GARY P. ARNOLD, GARY L. FISHMAN, BARRY S. §
LUTIN and RICHARD R. SCHREIBER                 §
§
Defendants.                                    §
§

## SUMMONS

THE STATE OF FLORIDA:

To All and Singular the Sheriffs of the State:

   YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint or
Petition in this action on Defendant: GARY P. ARNOLD, by courier to 9800 Noriega Drive, Pensacola, FL
32514

   The Defendant is required to serve written defenses to the Complaint or Petition on Plaintiff's
Attorney,

to wit:              Todd A. Zuckerbrod, Esquire
whose address is:    40 SE 5th Street, Suite 400
                     Boca Raton, FL 33432

within 40 days after service of this Summons on that Defendant, exclusive of the day of service, and to file
the original of the defenses with Clerk of this court either before service on Plaintiff's Attorney or
immediately thereafter.  If a Defendant fails to do so, a default will be entered against that Defendant for
the relief demanded in the Complaint or Petition.

   WITNESS my hand and seal of said Court on March __, 2011. MAR 14 2011

SHARON R. BOCK                      SHARON R. BOCK
Clerk & Comptroller                 As Clerk & Comptroller, Circuit Civil Court
P.O. Box 4667                       Palm Beach County, Florida
West Palm Beach, Florida
33402-4667

                                    As Deputy Clerk

                                    KRISTIN BUTLER

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

| | |
|---|---|
| DR. ART ARNOLD, LARRY AUERBACH, STEPHEN AXELROD, ADREA BRIER, RALPH ECKLER, RICHIE FRIEDMAN, MARGARET HEGLUND, NORMAN CHARLES HEGLUND, KAI TAK INTERNATIONAL LTD., ANN B. KUEFFNER, ZVI KURTZMAN, CIPORA LAVUT, CHANA KURTZMAN, REGINA C. LEMMER, MACATHEL LP, CRAIG MACNAB, GREGORY MCDANIEL, LARRY MCNAMARA, PHYLLIS POOR, JAMES TIAMPO and WOLFE AXELROD WEINBERGER ASSOCIATES, LLC | § § § § § § § § § |
| Plaintiffs, | § § |
| -versus- | § § |
| THOMAS A. MCFALL, DAVID F HACKETT, ROBERT M. BROWN, GARY P. ARNOLD, GARY L. FISHMAN, BARRY S. LUTIN and RICHARD R. SCHREIBER | § § § § |
| Defendants. | § § § |

**90 2011 CA 003845 XXXXMB**

Case No.

**AB**

Fla. Bar No: 0573337

SHARON R. BOCK
PALM BEACH COU...
CIRCUIT CIV...

2011 MAR 14  AM 10: 02

**FILED**

## SUMMONS

THE STATE OF FLORIDA:

To All and Singular the Sheriffs of the State:

YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint or Petition in this action on Defendant: BARRY S. LUTIN, by courier to 14 Town Colony Drive, Middletown, CT 06457

The Defendant is required to serve written defenses to the Complaint or Petition on Plaintiff's Attorney,

to wit:            Todd A. Zuckerbrod, Esquire
whose address is:     40 SE 5ᵗʰ Street, Suite 400
                 Boca Raton, FL 33432

within 40 days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with Clerk of this court either before service on Plaintiff's Attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

WITNESS my hand and seal of said Court on March ___, 201 **MAR 14 2011**

SHARON R. BOCK
Clerk & Comptroller
P.O. Box 4667
West Palm Beach, Florida
33402-4667

SHARON R. BOCK
Clerk & Comptroller, Circuit Civil Court
Palm Beach County, Florida

As Deputy Clerk

**KRISTIN BUTLER**

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 50 2011 CA 003845 XXXXMB AB

DR. ART ARNOLD, LARRY AUERBACH
STEPHEN AXELROD, ADREA BRIER,
RALPH ECKLER, RICHIE FRIEDMAN,
MARGARET HEGLUND, NORMAN
CHARLES HEGLUND, KAI TAK
INTERNATIONAL, LTD., ANN B.
KUEFFNER, ZVI KURTZMAN, CIPORA
LAVUT, CHANA KURTZMAN, REGINA C.
LEMMER, MACATHEL LP, CRAIG
MACNAB, GREGORY MCDANIEL, LARRY
MCNAMARA, PHYLLIS POOR, JAMES
TIAMPO and WOLFE AXELROD
WEINBERGER ASSOCIATES, LLC,

     Plaintiffs,

v.

THOMAS A. MCFALL, DAVID F. HACKETT,
ROBERT M. BROWN, GARY P. ARNOLD,
GARY L. FISHMAN, BARRY S. LUTIN and
RICHARD R. SCHREIBER,

     Defendants.

_____/

## NOTICE OF APPEARANCE

    Steven J. Brodie and Aaron S. Weiss of Carlton Fields, P.A., hereby file their Notice of

Appearance as attorneys for Defendant, Thomas A. McFall, David F. Hackett, Robert M. Brown,

Gary L. Fishman and Richard S. Schreiber, in the above-styled action, and request that all

pleadings, correspondence and other papers be served on the undersigned.

18470405.11

1

**C A R L T O N   F I E L D S, P. A.**
100 Southeast Second Street – Suite 4200 · Miami · Florida  33131-2114 · 305.530.0050

Dated: March __17__, 2011

By: _____

Steven J. Brodie (FL Bar # 333069)
Email: sbrodie@carltonfields.com
Aaron S. Weiss (FL Bar #48813)
Email: aweiss@carltonfields.com
**CARLTON FIELDS, P.A**
100 Southeast Second Street, Suite 4200
Miami, Florida 33131
Telephone No. (305) 530-0050
Facsimile No. (305) 530-0055

*Attorneys for Defendants Thomas A. McFall,*
*David F. Hackett, Robert M. Brown, Gary L.*
*Fishman and Richard S. Schreiber*

18470405.12

2

## CERTIFICATE OF SERVICE

I do hereby certify that a copy hereof was furnished via U.S. mail this _17th_ day of

March, 2011, to:

Todd A. Zuckerbrod
Email: tz@tzbrokerlaw.com
**TODD A. ZUCKERBROD, P.A.**
40 S. E. Fifth Street, Suite 400
Boca Raton, Florida 33432
Telephone: (561) 544-8144
Facsimile: (561) 544-1101

*Attorneys for Plaintiffs*


_____
Aaron S. Weiss

18470405.13

3

**CARLTON FIELDS, P.A.**
100 Southeast Second Street – Suite 4200 · Miami · Florida  33131-2114 · 305.530.0050

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.:  50 2011 CA 003845 XXXXMB AB

DR. ART ARNOLD, LARRY AUERBACH
STEPHEN AXELROD, ADREA BRIER,
RALPH ECKLER, RICHIE FRIEDMAN,
MARGARET HEGLUND, NORMAN
CHARLES HEGLUND, KAI TAK
INTERNATIONAL, LTD., ANN B.
KUEFFNER, ZVI KURTZMAN, CIPORA
LAVUT, CHANA KURTZMAN, REGINA C.
LEMMER, MACATHEL LP, CRAIG
MACNAB, GREGORY MCDANIEL, LARRY
MCNAMARA, PHYLLIS POOR, JAMES
TIAMPO and WOLFE AXELROD
WEINBERGER ASSOCIATES, LLC,

     Plaintiffs,

v.

THOMAS A. MCFALL, DAVID F. HACKETT,
ROBERT M. BROWN, GARY P. ARNOLD,
GARY L. FISHMAN, BARRY S. LUTIN and
RICHARD R. SCHREIBER,

     Defendants.

_____/

## ACCEPTANCE OF SERVICE OF PROCESS FOR DEFENDANT GARY P. ARNOLD

The undersigned attorney for Defendant Gary P. Arnold hereby acknowledges acceptance

of service of the Summons and Complaint as of March 24, 2011, in the above-captioned action.

Pursuant to stipulation between Plaintiffs and Defendants, Defendant Arnold's time to answer,

**C A R L T O N F I E L D S, P. A.**
100 Southeast Second Street · Suite 4200 · Miami · Florida 33131-2114 · 305.530.0050

18509738.1

move or otherwise respond to the Complaint shall be extended to and including April 25, 2011,

subject, however to any subsequent stipulation further extending the time to respond.


Dated: March 25, 2011                    By: _____

                                             Steven J. Brodie (FL Bar # 333069)
                                             Email: sbrodie@carltonfields.com
                                             Aaron S. Weiss (FL Bar #48813)
                                             Email: aweiss@carltonfields.com
                                             **CARLTON FIELDS, P.A**
                                             100 Southeast Second Street, Suite 4200
                                             Miami, Florida 33131
                                             Telephone No. (305) 530-0050
                                             Facsimile No. (305) 530-0055

                                             *Attorneys for Defendants Thomas A. McFall,
                                             David F. Hackett, Robert M. Brown, Gary L.
                                             Fishman, Richard S. Schreiber and Gary P.
                                             Arnold*

**CARLTON FIELDS, P.A.**
100 Southeast Second Street – Suite 4200 · Miami · Florida 33131-2114 · 305.530.0050

18509738.1

## CERTIFICATE OF SERVICE

I do hereby certify that a copy hereof was furnished via U.S. mail this _____ day of

March, 2011, to:

Todd A. Zuckerbrod
Email: tz@tzbrokerlaw.com
**TODD A. ZUCKERBROD, P.A.**
40 S. E. Fifth Street, Suite 400
Boca Raton, Florida  33432
Telephone:  (561) 544-8144
Facsimile:  (561) 544-1101

*Attorneys for Plaintiffs*

_____
Aaron S. Weiss

3

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 50 2011 CA 003845 XXXXMB AB

DR. ART ARNOLD, LARRY AUERBACH
STEPHEN AXELROD, ADREA BRIER,
RALPH ECKLER, RICHIE FRIEDMAN,
MARGARET HEGLUND, NORMAN
CHARLES HEGLUND, KAI TAK
INTERNATIONAL, LTD., ANN B.
KUEFFNER, ZVI KURTZMAN, CIPORA
LAVUT, CHANA KURTZMAN, REGINA C.
LEMMER, MACATHEL LP, CRAIG
MACNAB, GREGORY MCDANIEL, LARRY
MCNAMARA, PHYLLIS POOR, JAMES
TIAMPO and WOLFE AXELROD
WEINBERGER ASSOCIATES, LLC,

     Plaintiffs,

v.

THOMAS A. MCFALL, DAVID F. HACKETT,
ROBERT M. BROWN, GARY P. ARNOLD,
GARY L. FISHMAN, BARRY S. LUTIN and
RICHARD R. SCHREIBER,

     Defendants.

_____ /

## NOTICE OF APPEARANCE

    Steven J. Brodie and Aaron S. Weiss of Carlton Fields, P.A., hereby file their Notice of

Appearance as attorneys for Defendant Gary P. Arnold, in the above-styled action, and request

that all pleadings, correspondence and other papers be served on the undersigned.

18509680.1

1

CARLTON FIELDS, P. A.
100 Southeast Second Street – Suite 4200 · Miami · Florida 33131-2114 · 305.530.0050

Dated: March ___, 2011

By: _____
Steven J. Brodie (FL Bar # 333069)
Email: sbrodie@carltonfields.com
Aaron S. Weiss (FL Bar #48813)
Email: aweiss@carltonfields.com
**CARLTON FIELDS, P.A**
100 Southeast Second Street, Suite 4200
Miami, Florida 33131
Telephone No. (305) 530-0050
Facsimile No. (305) 530-0055

*Attorneys for Defendants Thomas A. McFall,*
*David F. Hackett, Robert M. Brown, Gary L.*
*Fishman, Richard S. Schreiber and Gary P.*
*Arnold*

18509680.1

2

## CERTIFICATE OF SERVICE

I do hereby certify that a copy hereof was furnished via U.S. mail this _____ 25_____ day of

March, 2011, to:

Todd A. Zuckerbrod
Email: tz@tzbrokerlaw.com
**TODD A. ZUCKERBROD, P.A.**
40 S. E. Fifth Street, Suite 400
Boca Raton, Florida 33432
Telephone: (561) 544-8144
Facsimile: (561) 544-1101

*Attorneys for Plaintiffs*

_____
Aaron S. Weiss



# VERIFIED RETURN OF SERVICE

**State of Florida**                          **County of Palm Beach**                          **Circuit Court**

Case Number: 502011 CA 003845 XXXX MB AB

Plaintiff:
**DR. ART ARNOLD, LARRY AUERBACH, STEPHEN AXELROD, ET.AL.,**
vs.
Defendant:
**THOMAS A. MCFALL, DAVID F. HACKETT, ET.AL.,**



For: Todd A. Zuckerbrod
    Todd A. Zuckerbrod, P.A.

Received by Gotcha Investigations, Inc. on the 17th day of March, 2011 at 3:17 pm to be served on **GARY P. ARNOLD, 9800 NORIEGA DRIVE, PENSACOLA, FL 32514**. I, _____David Quick_____, being duly sworn, depose and say that on the _26_ day of _March_, 20_11_ at _1:35_ _p_.m., executed service by delivering a true copy of the **Summons and Complaint** in accordance with state statutes in the manner marked below:

(X) INDIVIDUAL SERVICE: Served the within-named person.

( ) SUBSTITUTE SERVICE: By serving _____ as
_____

( ) POSTED SERVICE: After attempting service on ___/___ at _____ and on ___/___ at _____ to a conspicuous place on the property described herein.

( ) NON SERVICE: For the reason detailed in the Comments below.

Military Status: ( ) Yes or (X) No   If yes, what branch? _____

Marital Status: (X) Married or ( ) Single   Name of Spouse _Patricia Arnold_

**COMMENTS:** W/M  50's  wght 240  6'1"  Grey hair and Glasses

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the _28th_ day
of _March_, _2011_ by the affiant who is
personally known to me.

_____
**NOTARY PUBLIC**

_____
PROCESS SERVER # _466_
Appointed in accordance with State Statutes

**Gotcha Investigations, Inc.**
**P.O. Box 840324**
**Pembroke Pines, FL  33084**
**(954) 270-4597**

Our Job Serial Number: 2011001516

Copyright © 1992-2009 Database Services, Inc. - Process Server's Toolbox V6.3x


KRISTINA TRAIL
MY COMMISSION # EE 009961
EXPIRES: July 19, 2014
Bonded Thru Notary Public Underwriters

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

3/26/11
1:35pm
by: P.S. David Quick #406
P.S.

DR. ART ARNOLD, LARRY AUERBACH, STEPHEN §
AXELROD, ADREA BRIER, RALPH ECKLER, RICHIE §
FRIEDMAN, MARGARET HEGLUND, NORMAN CHARLES §
HEGLUND, KAI TAK INTERNATIONAL LTD., ANN B. §
KUEFFNER, ZVI KURTZMAN, CIPORA LAVUT, CHANA §
KURTZMAN, REGINA C. LEMMER, MACATHEL LP, §
CRAIG MACNAB, GREGORY MCDANIEL, LARRY §
MCNAMARA, PHYLLIS POOR, JAMES TIAMPO and §
WOLFE AXELROD WEINBERGER ASSOCIATES, LLC §
    §
    §
    Plaintiffs, §
    §
    -versus- §
    §
THOMAS A. MCFALL, DAVID F HACKETT, ROBERT M. §
BROWN, GARY P. ARNOLD, GARY L. FISHMAN, BARRY S. §
LUTIN and RICHARD R. SCHREIBER §
    §
    Defendants. §

5C 2011 CA 003845 XXXXMB

Case No.

Fla. Bar No: 0573337

2011 MAR 14 AM 10: 02
SHARON R. BOCK
PALM BEACH COUNTY

## SUMMONS

THE STATE OF FLORIDA:

To All and Singular the Sheriffs of the State:

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint or Petition in this action on Defendant: GARY P. ARNOLD, by courier to 9800 Noriega Drive, Pensacola, FL 32514

      The Defendant is required to serve written defenses to the Complaint or Petition on Plaintiff's Attorney,

to wit:             Todd A. Zuckerbrod, Esquire
whose address is:    40 SE 5th Street, Suite 400
                Boca Raton, FL 33432

within 40 days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with Clerk of this court either before service on Plaintiff's Attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

      WITNESS my hand and seal of said Court on March __, 2011. MAR 14 2011

SHARON R. BOCK
Clerk & Comptroller
P.O. Box 4667
West Palm Beach, Florida
33402-4667

SHARON R. BOCK
As Clerk & Comptroller, Circuit Civil Court
Palm Beach County, Florida

By: _____
           As Deputy Clerk

KRISTIN BUTLER

1516

## Report Selection Criteria

| | |
|---|---|
| **Case ID:** | 2011CA003845 |
| **Docket Start Date:** | |
| **Docket Ending Date:** | |

## Case Description

| | |
|---|---|
| **Case ID:** | 502011CA003845XXXXMB |
| **Case Caption:** | DR ART ARNOLD V THOMAS MCFALL |
| **Division:** | AB - HAFELE |
| **Filing Date:** | Monday , March 14th, 2011 |
| **Court:** | CA - CIRCUIT CIVIL |
| **Location:** | MB - MAIN BRANCH |
| **Jury:** | Y-Jury |
| **Type:** | YK - SECURITIES LITIGATION |
| **Status:** | PE - PENDING |

## Related Cases

*No related cases were found.*

## Case Event Schedule

*No case events were found.*

## Case Parties

| Seq # | Assoc | Expn Date | Type | ID | Name | | |
|---|---|---|---|---|---|---|---|
| 1 | | | PLAINTIFF | @2564105 | ARNOLD, DR ART | Aliases: | *none* |
| 2 | 1 | | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | *none* |
| 3 | | | PLAINTIFF | @2564124 | AUERBACH, LARRY | Aliases: | *none* |
| 4 | 3 | | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | *none* |

| 5 | | | PLAINTIFF | @2564125 | AXELROD, STEPHEN | Aliases: | none |
|---|---|---|---|---|---|---|---|
| 6 | 5 | | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 7 | | | PLAINTIFF | @2564126 | BRIER, ADREA | Aliases: | none |
| 8 | 7 | | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 9 | | | PLAINTIFF | @2564127 | ECKLER, RALPH | Aliases: | none |
| 10 | 9 | | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 11 | | | PLAINTIFF | @2564128 | FRIEDMAN, RICHIE | Aliases: | none |
| 12 | 11 | | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 13 | | | PLAINTIFF | @2564129 | HEGLUND, MARGARET | Aliases: | none |
| 14 | 13 | | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 15 | | | PLAINTIFF | @2564130 | HEGLUND, NORMAN CHARLES | Aliases: | none |
| 16 | 15 | | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 17 | | | PLAINTIFF | @2564131 | KAI TAK INTERNATIONAL LTD | Aliases: | none |

| 18 | 17 | | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 19 | | | PLAINTIFF | @2564132 | KUEFFNER, ANN B | Aliases: | none |
| 20 | 19 | | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 21 | | | PLAINTIFF | @2564133 | KURTZMAN, ZVI | Aliases: | none |
| 22 | 21 | | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 23 | | | PLAINTIFF | @2564134 | LAVUT, CIPORA | Aliases: | none |
| 24 | 23 | | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 25 | | | PLAINTIFF | @2564135 | KURTZMAN, CHANA | Aliases: | none |
| 26 | 25 | | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 27 | | | PLAINTIFF | @2564136 | LEMMER, REGINA C | Aliases: | none |
| 28 | 27 | | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 29 | | | PLAINTIFF | @2564137 | MACATHEL LP | Aliases: | none |
| 30 | 29 | | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 31 | | | PLAINTIFF | @2564138 | MACNAB, CRAIG | Aliases: | none |

| 32 | 31 |  | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 33 |  |  | PLAINTIFF | @2564139 | MCDANIEL, GREGORY | Aliases: | none |
| 34 | 33 |  | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 35 |  |  | PLAINTIFF | @2564140 | MANAMARA, LARRY | Aliases: | none |
| 36 | 35 |  | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 37 |  |  | PLAINTIFF | @2564141 | POOR, PHYLLIS | Aliases: | none |
| 38 | 37 |  | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 39 |  |  | PLAINTIFF | @2564142 | TIAMPO, JAMES | Aliases: | none |
| 40 | 39 |  | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 41 |  |  | PLAINTIFF | @2564143 | WOLFE AXELROD WEINBERGER ASSOCIATES LLC | Aliases: | none |
| 42 | 41 |  | ATTORNEY | 0573337 | ZUCKERBROD ESQ, TODD A | Aliases: | none |
| 43 |  |  | DEFENDANT | @2564144 | MCFALL, THOMAS A | Aliases: | none |
| 44 |  |  | DEFENDANT | @2564145 | HACKETT, DAVID F | Aliases: | none |

| 45 | | DEFENDANT | @2564146 | BROWN, ROBERT M | Aliases: | none |
|----|----|-----------|----------|------------------|----------|------|
| 46 | | DEFENDANT | @2564147 | ARNOLD, GARY P | Aliases: | none |
| 47 | | DEFENDANT | @2564148 | FISHMAN, GARY L | Aliases: | none |
| 48 | | DEFENDANT | @2564149 | LUTIN, BARRY S | Aliases: | none |
| 49 | | DEFENDANT | @2564150 | SCHREIBER, RICHARD R | Aliases: | none |
| 50 | | JUDGE | AB | HAFELE, JUDGE DONALD W | Aliases: | none |
| 51 | | ATTORNEY | 0048813 | WEISS, AARON | Aliases: | none |
| 52 | 43 | ATTORNEY | 0333069 | BRODIE , ESQ, STEVEN J | Aliases: | none |

## Docket Entries

| Docket Number | Docket Type | | Book and Page No. | Attached To: |
|---------------|-------------|--|-------------------|--------------|
| | 00000 - ADDITIONAL COMMENTS | | | |
| Filing Date: | 14-MAR-2011 | | | |
| Filing Party: | | | | |
| Disposition Amount: | | | | |
| Docket Text: | none. | | | |
| | PE - PENDING | | | |
| Filing Date: | 14-MAR-2011 | | | |
| Filing Party: | | | | |
| Disposition Amount: | | | | |

| Docket Text: | *none.* |
|---|---|

| | 800FF - CAFF | |
|---|---|---|
| **Filing Date:** | 14-MAR-2011 |
| **Filing Party:** | ARNOLD, DR ART |
| **Disposition Amount:** | |
| **Docket Text:** | *none.* |

| | RCPT - RECEIPT FOR PAYMENT | |
|---|---|---|
| **Filing Date:** | 14-MAR-2011 |
| **Filing Party:** | ARNOLD, DR ART |
| **Disposition Amount:** | |
| **Docket Text:** | A Payment of -$426.00 was made on receipt CAMB534606. |

| 1 | CMP - COMPLAINT | |
|---|---|---|
| **Filing Date:** | 14-MAR-2011 |
| **Filing Party:** | ARNOLD, DR ART |
| **Disposition Amount:** | |
| **Docket Text:** | *none.* |

| 2 | CCS - CIVIL COVER SHEET | |
|---|---|---|
| **Filing Date:** | 14-MAR-2011 |
| **Filing Party:** | ARNOLD, DR ART |
| **Disposition Amount:** | |
| **Docket Text:** | *none.* |

| 3 | SMIS - SUMMONS ISSUED | |
|---|---|---|
| **Filing Date:** | 14-MAR-2011 |
| **Filing Party:** | ARNOLD, GARY P |
| **Disposition Amount:** | |
| **Docket Text:** | SM-11-023081 |

| 4 | SMIS - SUMMONS ISSUED | |
|---|---|---|
| **Filing Date:** | 14-MAR-2011 |
| **Filing Party:** | LUTIN, BARRY S |
| **Disposition Amount:** | |
| **Docket Text:** | SM-11-023082 |

| 5 | NOAP - NOTICE OF APPEARANCE | |
|---|---|---|
| **Filing Date:** | 21-MAR-2011 |
| | |

| Filing Party: | WEISS, AARON | |
|---|---|---|
| **Disposition Amount:** | | |
| **Docket Text:** | *none.* | |
| 6 | NOT - NOTICE | |
| **Filing Date:** | 29-MAR-2011 | |
| **Filing Party:** | | |
| **Disposition Amount:** | | |
| **Docket Text:** | OF ACCEPTNACE OF SERVICE | |
| 7 | NOAP - NOTICE OF APPEARANCE | |
| **Filing Date:** | 29-MAR-2011 | |
| **Filing Party:** | BRODIE , ESQ, STEVEN J | |
| **Disposition Amount:** | | |
| **Docket Text:** | *none.* | |
| | SRTN - SERVICE RETURN (ATTACHED) | |
| **Filing Date:** | 31-MAR-2011 | |
| **Filing Party:** | | |
| **Disposition Amount:** | | |
| **Docket Text:** | SERVED | |